UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RONALD SEIVER, *Pro Se*, | ) Case No.: 4:25 CV 556 |
| Petitioner | ) JUDGE SOLOMON OLIVER, JR. |
| v. | ) |
| WARDEN, FCI ELKTON, | ) |
| Respondent | ) MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Pro Se Petitioner Ronald Seiver, a federal inmate presently incarcerated at FCI Elkton, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. He challenges a decision of a Disciplinary Hearing Officer ("DHO") finding him guilty of phone abuse. (Doc. No. 1). Petitioner also alleges that the disciplinary process violates his First Amendment's "right to communicate with family." (Doc. No. 1-1 at 14). He asks the Court to expunge the incident report and restore his lost good time credit. (Doc. No. 1 at 8).

For the reasons that follow, the Petition is denied.

## II. BACKGROUND

On July 7, 2022, Petitioner received an incident report completed by James Bartell, SIS Technician, for phone abuse (Code 197) and contacting the public without authorization (Code 327).

Bartell reported that on April 21, 2022, Petitioner circumvented the prison's TRULINCS emailing system and the TRUFONE phone system to communicate with one of the victims from Petitioner's prior case, which is a violation of a non-contact order from the courts. Bartell stated that Petitioner was also able to receive inappropriate web sites of minor children. When asked about the incident, Petitioner admitted to contacting the victim through information the SIS Department intercepted from Petitioner's mother and friends. (*See* Doc. No. 1-2).

On September 14, 2022, Bartell amended the incident report to include additional information that was discovered in the course of the investigation. Bartell reported that two email addresses provided Petitioner with information concerning his victim, J.L., who was a minor at the time, and child pornography websites; Petitioner's mother was sending Petitioner information about J.L. through Petitioner's TRULINCS account; and after reviewing previous recorded phone calls on TRUFONE, the investigator discovered that on two occasions Petitioner instructed his mother on how to reach J.L. through social media. Petitioner admitted to contacting the victim through the information the SIS Department intercepted from Petitioner's mother and friends, provided the investigator with J.L.'s name, and expressed belief that it was permissible to reach out to J.L. because she is no longer a minor. The report also noted that Petitioner's special conditions of supervision state that he is not permitted to receive or transmit child pornography. Although the Code violations identified at the top of the report included Code 197 and Code 327, the body of the report indicated Petitioner would receive an incident report for Code 297A and Code 327A.[1] The

---

[1] The Bureau of Prisons Program Statement 5270.09 defines the alleged prohibited acts as follows: Code 197 – "Use of the telephone for an illegal purpose or to commit or further a a Greatest category prohibited act"; Code 297 – "Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number

report was delivered to Petitioner on September 15, 2022. (*See* Doc. No. 1-3).

It appears that the incident report was amended for the third time on September 14, 2022. This report included the same description of the incident. However, the report now identified the code violations as Code 297A and Code 327A, at the top of the report and in the description of the incident. This report was delivered to Petitioner on September 20, 2022. (*See* Doc. No. 1-4). Petitioner claimed in his regional administrative appeal, however, that he did not receive this report until September 25, 2022. (Doc. No. 1-11).

On September 27, 2022, a disciplinary hearing was conducted before the DHO. The DHO report indicated that D. McCool gave Petitioner written notice of the charge (a copy of the incident report) on September 20, 2022, and C. Wilson advised Petitioner of his rights before the DHO on September 25, 2022. Petitioner waived his right to a staff representative and waived his right to witnesses. (Doc. Nos. 1-5 and 1-6). And Petitioner denied the charges. (Doc. No. 1-5).

In reaching its decision, the DHO considered the reporting staff member's written statement; Bartell's memorandum to the acting warden requesting permanent suspension of Petitioner's TRULINCS account, noting that his investigation revealed the Peitioner had circumvented TRULINCS and TRUFONE systems in an attempt to contact a victim in his initial case by using Apple Siri, two "unidentified person email addresses," and his mother; Petitioner's August 25, 2010 pre-sentence report detailing Petitioner's repeated illicit relationship with minors, his ability to

---

called; or to commit or further a High category prohibited act"; and Code 327 – "Unauthorized contacts with the public." https://www.bop.gov/policy/progstat/5270_009

access pornographic websites on government servers while incarcerated at FCI Fort Dix, and Petitioner's family's history of enabling Petitioner to contact his victims; Petitioner's testimony at the hearing; the threat assessment case file for Petitioner; the SENTRY documentation; and the TRU SYSTEM documentation. (Doc. Nos. 1-5 to 1-9).

On October 14, 2022, the DHO determined, based on the greater weight of the evidence, that Petitioner had committed phone abuse in violation of Code 297 and sanctioned Petitioner as follows: (1) 27 days loss of good conduct time; (2) 180 days loss of email; and (3) 180 days loss of phone. (Doc. No. 1-9). The DHO report was delivered to the Petitioner on October 21, 2022. (*Id.*).

Petitioner now claims that the DHO disciplined him for a non-existent offense, alleging that Code 297 does not cover Petitioner's conduct; the DHO failed to provide fair notice of the charges; the disciplinary conviction was not supported by sufficient evidence; and the DHO applied an incorrect burden of proof. Petitioner argues that his due process rights were therefore violated. Petitioner additionally claims that the disciplinary process itself violates his First Amendment right to communicate with family

### III. STANDARD OF REVIEW

Writs of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting Section 2241(c)).

Because Petitioner is appearing *pro se*, the allegations in his petition must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel.

*Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, this Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it determines the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *see also Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (holding district courts have a duty to "screen out" petitions lacking merit on their face under 28 U.S.C. § 2243).

## IV. DISCUSSION

Petitioner claims that the DHO disciplined him for a non-existent offense, alleging that Code 297 does not cover Petitioner's conduct; the DHO failed to provide fair notice of the charges; the disciplinary conviction was not supported by sufficient evidence; and the DHO applied an incorrect burden of proof. Petitioner argues that his due process rights were therefore violated. Petitioner also claims that the disciplinary process itself violates his First Amendment right to communicate with family.

### A. Due Process

The Court's ability to review prison disciplinary proceedings is limited. District courts have no authority to review a disciplinary committee's resolution of factual disputes, or to make a redetermination of an inmate's innocence or guilt. *Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill*, 472 U.S. 445, 455 (1985). The only question for the Court to determine is whether the hearing complied with the basic requirements needed to satisfy due process. The standard is not a difficult one to meet. To comply with the requirements of the Due Process Clause, prison officials need only provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly

hazardous to institutional safety or correctional goals, and (3) a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1972). Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. *Id.* at 569-70.

Furthermore, due process requires only that disciplinary findings resulting in the loss of good time credits be supported by "some evidence" in the record. *Superintendent, Massachusetts Correctional Institution at Wolpole*, 472 U.S. at 454-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* The DHO is not required to base findings on overwhelming or irrefutable proof of guilt. Even where the evidence is contradictory or partially exculpatory, a DHO may base a finding of guilt on only "some evidence" that indicates the prisoner is guilty. *Id.* at 457.

Here, to the extent Petitioner claims a denial of due process, his argument fails, as the record reflects that Petitioner was afforded due process protections. Petitioner received a copy of the re-written incident report on either September 20, 2022, or September 25, 2022, and the disciplinary hearing was held on September 27, 2022. Petitioner presented his own testimony for the DHO's consideration, and he waived his right to present witnesses. And on October 21, 2022, a prison staff member delivered to Petitioner the DHO report containing a lengthy written statement outlining the evidence relied on and the reasons for the disciplinary action.

To the extent Petitioner claims the DHO's evidence was insufficient, his claim fails. The evidence considered by the DHO included the reporting staff member's written statement; Bartell's memorandum to the acting warden noting that his investigation revealed the Peitioner had circumvented TRULINCS and TRUFONE systems in an attempt to contact a victim in his initial

case by using Apple Siri, two "unidentified person email addresses," and his mother; Petitioner's pre-sentence report detailing Petitioner's repeated illicit relationship with minors, his ability to access pornographic websites on government servers while incarcerated at FCI Fort Dix, and Petitioner's family's history of enabling Petitioner to contact his victims; the threat assessment case file for Petitioner; the SENTRY documentation; and the TRU SYSTEM documentation. This is "some evidence" in the record to support the Petitioner's disciplinary conviction consistent with due process.

Accordingly, the record demonstrates that Petitioner's hearing complied with the basic requirements needed to satisfy due process and there is "some evidence" to support the DHO's finding that Petitioner was guilty of phone abuse. While Petitioner argues that the DHO misconstrued the definition of the conduct violation with which he was charged and he disputes that the conduct violation applies to his purported conduct, this disagreement is a challenge to the DHO's determination of guilt, which the Court cannot review, and it does not demonstrate that he was denied due process.

### B. First Amendment

To the extent Petitioner alleges the disciplinary process violates the First Amendment, Petitioner's claim fails. Habeas corpus is generally available to prisoners seeking relief from unlawful imprisonment or custody. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Federal prisoners may use 28 U.S.C. § 2241 to attack the manner in which their sentence is being executed, such as the computation of sentence credits or parole eligibility. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998)(citing *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991)); *Wright v. United States Bd. of Parole*, 557 F.2d 74, 77 (6th Cir. 1977). Section 2241, however, is not available

to review questions unrelated to the cause of detention. *Martin*, 391 F.3d at 714. Prisoners challenging the conditions of their confinement must do so through a civil rights action. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). Virtually every aspect of a prisoner's daily life that does not affect the duration of his confinement is considered a "condition of confinement."

Here, Petitioner claims that the "broad ban against Petitioner," presumably from the use of the telephone and email, effectively leaves him with no reasonable means of communicating with his family members, which is a violation of his First Amendment rights. (Doc. No. 1-1 at 16). Communication with family during incarceration concerns the conditions of his confinement; it is not a challenge to the execution of Petitioner's sentence or the fact of his confinement. Petitioner is therefore not entitled to relief under Section 2241 concerning his First Amendment claim.

## V. CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is denied and this action is hereby dismissed pursuant to 28 U.S.C. § 2243. Further, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

June 26, 2025